IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
2:13-CV-43-FL

| | | |
|---|---|---|
| JAQUELINE MEBANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Jaqueline Mebane ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and her application for supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 23, 26). Each party filed a memorandum in support of its motion. (D.E. 24, 27). Plaintiff also filed a response to the Commissioner's motion. (D.E. 29). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (*see* 4th Minute Entry dated 8 May 2014), after initial referral to the Honorable William A. Webb (*see* 1st Minute Entry dated 20 Feb. 2014), who has since retired. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I.    BACKGROUND

### A.    Case History

Plaintiff filed applications for DIB and SSI on 1 December 2010, alleging a disability onset date of 25 August 2008.  Transcript of Proceedings ("Tr.") 23.  The applications were denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 23.  On 19 April 2012, a video hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and a vocational expert testified.  Tr. 40-77.  In a written decision dated 22 May 2012, the ALJ found that plaintiff was not disabled from the alleged onset date of 25 August 2008[2] through the date of the decision, and therefore not entitled to DIB or SSI.  Tr. 23-35.  Plaintiff timely requested review by the Appeals Council.  Tr. 7, 16.  The Appeals Council denied the request for review on 31 May 2013.  Tr. 1-3.  At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.  Plaintiff commenced this proceeding for judicial review on 24 July 2013, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Mot. to Proceed *In Forma Pauperis* (D.E. 1); Order Allowing Mot. (D.E. 6); Compl. (D.E. 7)).

### B.    Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual

---

[2] On 1 October 2010, an ALJ issued a decision denying applications for DIB and SSI plaintiff had filed in January 2009.  Tr. 81-87.  Plaintiff apparently did not appeal from that decision.  It therefore appears that the period of alleged disability at issue in this case actually began on 2 October 2010, not the date of onset of 25 August 2008 alleged by plaintiff.  On remand, the Commissioner should address this issue.

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"]. . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C.      Findings of the ALJ

Plaintiff was 46 years old on the recommended onset date of disability and 50 years old on the date of the administrative hearing. *See* Tr. 33 ¶ 7. The ALJ found that plaintiff has at least a high school education. Tr. 33 ¶ 8. She has past work experience as a short order cook, button clamper, machine packager, and poultry hanger. Tr. 33 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 25 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that are severe within the meaning of the Regulations: borderline intellectual functioning,[3] degenerative disc disease, and major depressive disorder. Tr. 25 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings, including specifically Listing 12.05C for mental retardation. Tr. 25-26 ¶ 4.

---

[3] *See generally* Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 740 (4th ed. text rev. 2000) ("DSM–IV–TR"); *see also United States v. Wooden*, 693 F.3d 440, 452 n.4 (4th Cir. 2012) (internal quotation marks omitted) ("The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders.").

The ALJ next determined that plaintiff had the RFC to perform a limited range of medium work:[4]

> The claimant is able to lift/carry 50 pounds occasionally and 25 pounds frequently; she can stand/walk six hours in an eight-hour workday; she can sit six hours in an eight-hour workday; she has unlimited ability to push/pull, other than as noted with regard to lift/carry; she can occasionally climb and balance; she can frequently stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to hazards; she can understand, remember, and carry out simple, routine repetitive tasks in a non-production environment with few workplace changes; and she can have occasional interaction with coworkers and the general public.

Tr. 27 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work as a short order cook, button clamper, machine packager, and poultry hanger. Tr. 33 ¶ 4. At step five, relying on the testimony of the vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including jobs in the occupations of kitchen helper, hospital cleaner, and dining room attendant. Tr. 34 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 34 ¶ 11.

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[4] *See* 20 C.F.R. §§ 404.1567(c) (defining medium work as work involving lifting, carrying, pushing, or pulling up to 50 pounds occasionally and 25 pounds frequently), 416.967(c) (same); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Medium Work," http://www.oalj.dol.gov/libdot htm (last visited 27 June 2014). "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contentions

Plaintiff contends that the ALJ erred by: (1) not finding plaintiff's severe intellectual impairment to be mild mental retardation, rather than borderline intellectual functioning; (2) not

finding that plaintiff met or medically equaled Listing 12.05C for mental retardation; (3) understating plaintiff's limitations in the RFC determination; (4) improperly assessing the opinion of examining consulting psychologist John A. Thomason, M.A., Ph.D.; and (5) accepting the testimony of the vocational expert although it was based on a purportedly deficient RFC. Because the first three issues are dispositive of this appeal, the court limits its discussion below to those issues.

### C.    ALJ's Determination on Listing 12.05C

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Even if an impairment does not meet the criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a).

Listing 12.05 reads in relevant part:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Case 2:13-cv-00043-FL   Document 30   Filed 06/27/14   Page 7 of 15

. . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05C.

Therefore, a claimant must satisfy four requirements to meet or medically equal Listing 12.05C. The first two are found in the introductory diagnostic definition for mental retardation. First, the claimant must demonstrate "significantly subaverage general intellectual functioning." Listing 12.05. Second, such subaverage intellectual functioning must be accompanied by "deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22.[5] Listing 12.05.

The remaining two requirements are, of course, the C criteria, which relate to the severity of the mental retardation. The first requirement in the C criteria is that the claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70." Listing 12.05C. The second requirement is that there must be "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05C.

Here, the ALJ found that plaintiff did not meet Listing 12.05C on the following grounds:[6]

---

[5] While adaptive functioning is not defined in Listing 12.05C, Listing 12.00C1 describes adaptive activities as including such activities of daily living as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office." Listing 12.00C1. In the DSM-IV-TR, adaptive functioning is defined as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting" and identifies areas of adaptive functioning as including communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, health, and safety. *See* DSM–IV–TR 41, 42; Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018–01, 20022, 2002 WL 661740 (Soc. Sec. Admin. 24 Apr. 2002) ("The definition of M[ental] R[etardation] we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations [including the Am. Psych. Assn.].."); *see also Blancas*, 690 F. Supp. 2d at 476 (citing *Arce v. Barnhart*, 185 Fed. Appx. 437, 438-39 (5th Cir. 2006)).

[6] The ALJ did not separately address whether plaintiff's impairment medically equals Listing 12.05C, and it otherwise appears that she intended her finding that plaintiff's intellectual impairment did not meet the listing to

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. While the claimant did receive a verbal IQ score of 67 and a full scale IQ score of 67 in 2009, and a full scale IQ of 61 in 2012, the claimant has a long work history and no significant deficits in adaptive functioning.

Tr. 27 ¶ 4.

Plaintiff argues that the ALJ erred in this determination. The court agrees, albeit not for all the same reasons advanced by plaintiff.

In the first sentence of her explanation, the ALJ states that plaintiff does not satisfy the C criteria because she does not meet both of the C criteria. In the next sentence, the ALJ acknowledges that plaintiff does meet the IQ requirement. Thus, the implication is that plaintiff does not meet the additional significant limitation requirement. In fact, though, plaintiff does meet the additional significant limitation requirement as a matter of law, because the ALJ found that plaintiff could not perform her past relevant work. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) (holding that the inability to perform past relevant work alone satisfies the additional significant limitation requirement). This requirement is also met by the ALJ's finding that plaintiff had a severe combination of impairments. *See id.* The ALJ's own decision thereby shows that plaintiff did satisfy the C criteria, belying the ALJ's express finding that plaintiff did not.

The remaining statement by the ALJ that plaintiff has a long work history and no significant deficits in adaptive functioning is irrelevant to whether plaintiff satisfies the C criteria. The ALJ's reference to these factors tends to confirm her apparent confusion over the requirements of the C criteria.

---

include the determination that it did not medically equal the listing. The court will therefore not address separately whether the intellectual impairment medically equals the listing.

The ALJ's reference to plaintiff's work history and purported lack of "significant" deficits in adaptive functioning suggests the possibility that the ALJ actually found plaintiff not to meet Listing 12.05C for failure to satisfy the adaptive functioning requirement of the diagnostic description of mental retardation because of the present lack of deficits in this area.[7] Whether she did so is unclear, because she did not mention the diagnostic description per se, instead expressly resting her ruling on the C criteria.

Moreover, if the ALJ's finding regarding deficits in adaptive functioning was based on the adaptive functioning requirement in the diagnostic description, she failed to conform the finding to the requirement. As noted, that requirement requires simply "deficits" in adaptive functioning, not "significant deficits," the terminology used by the ALJ. As the case law recognizes, the deficits in adaptive functioning requirement "does not specify what degree of deficit is required (*mild versus significant*, for example)." *Blancas v. Astrue*, 690 F. Supp. 2d 464, 477 (W.D. Tex. 2010) (emphasis added); *see also Nelson v. Astrue*, No. 1:09CV117, 2012 WL 373364, at *5 (M.D.N.C. 3 Feb. 2012) (quoting same passage from *Blancas*), *mem. op. & recommendation adopted by* J. (D.E. 19) (9 Mar. 2012). It therefore appears that, in the event the ALJ was relying on the adaptive functioning requirement in the diagnostic description, she misapprehended the showing required to satisfy it.

Notably, while finding plaintiff not to have "significant" deficits in adaptive functioning, the ALJ did find plaintiff to have moderate difficulties in social functioning and in concentration, persistence, or pace. Tr. 26 ¶ 4. These findings tend to contradict the ALJ's determination that plaintiff has no significant deficits in adaptive functioning. *See Nelson*, 2012 WL 373364, at *7 (finding of moderate difficulties in social functioning and activities of daily living); *Hager v. Astrue*, Civ. Act. No. 2:09–cv–01357, 2011 WL 1299509, at *3 (S.D. W. Va. 31 Mar. 2011)

---

[7] The ALJ did not make a finding regarding whether plaintiff had deficits in adaptive functioning prior to age 22.

(finding of moderate difficulties in concentration, persistence, or pace, and activities of daily living). The ALJ does not squarely resolve the apparent conflict between these rulings.

As to the ALJ's reliance on plaintiff's work history, such a history can certainly be relevant to whether a claimant with subaverage intellectual functioning has deficits in adaptive functioning satisfying the corresponding requirement of the diagnostic description of mental retardation. *See, e.g.*, *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) (affirming ALJ's finding that claimant did not have deficits in adaptive functioning and considered, among other evidence, work history); *Richardson v. Colvin*, No. 8:12-cv-3507-JDA, 2014 WL 793069, at *12 (D.S.C. 25 Feb. 2014) ("[W]ork history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, . . . can be relevant in determining whether a claimant manifested deficits in adaptive functioning . . . ."). But prior work history can be of limited relevance if it precedes the development of additional severe impairments:

> DSM–IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C). This listing implies that such an individual will be able to work unless he has, or until he develops, a severe physical or additional mental impairment. Therefore, the fact that [a claimant] has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments.

*Radford v. Astrue*, No. 5:08–CV–421–FL, 2009 WL 1675958, at *6 (E.D.N.C. 10 June 2009) (quoting *Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007)).

Here, plaintiff's work history precedes development of her back impairment, at least to the alleged disabling level of severity, and her major depressive disorder. *See, e.g.*, Tr. 28 ¶ 5 (noting plaintiff's testimony and report to a treatment provider that she stopped working because of back pain); 33 ¶ 5 (noting plaintiff's complaint of depression first appeared in medical records

in Jan. 2012). The ALJ did not explicitly discuss the relevance of plaintiff's work history in light of her subsequent development of these impairments.

The court concludes that the ALJ's decision fails to provide "an accurate and logical bridge from the evidence to the [the ALJ's] conclusions" with respect to Listing 12.05C. *Nelson*, 2012 WL 373364, at \*7 (internal quotation marks omitted). Given this deficiency, the court cannot determine whether the determination is supported by substantial evidence. This case should accordingly be remanded.

### D. ALJ's Severity and RFC Determinations

As noted, plaintiff argues that the ALJ's severity and RFC determinations are flawed. The court agrees, although not on all the same grounds.

In support of her RFC determination, the ALJ made the following findings:

> *The claimant has also been diagnosed with borderline intellectual functioning.* School records show that the claimant received poor grades, but do not show that she was in special education classes (Exhibit 1E). The claimant told Dr. Thomason that she was not in special education classes. While the claimant's scores on IQ testing in April 2009 and January 2012 fall within the range of mild mental retardation, she has lived alone, has worked at the substantial gainful activity level, and has been able to care for her own needs. *Dr. English remarked that* the claimant related very well and *her adaptive abilities were likely higher than her cognitive level would suggest.* He stated that she would be able to manage a limited amount of funds to meet her basic needs. The claimant also remarked that she had a driver's license and did not drive only because she did not have a vehicle.

Tr. 30-31 ¶ 5 (emphasis added).

The finding that plaintiff had been diagnosed with borderline intellectual functioning appears to be erroneous. The ALJ does not cite to any portion of the record in support of this finding, and the court has not identified any such diagnosis of plaintiff. Instead, the only diagnoses of plaintiff's intellectual functioning level which appear to be of record are that plaintiff has mental retardation. The diagnosis of mild mental retardation was made by the only

two psychologists who examined plaintiff: consulting psychologist Edward V. English, M.A., Ph.D. on 14 April 2009 (Tr. 341, 342) and consulting psychologist Dr. John Thomason on 12 January 2012 (Tr. 418, 420, 421). The two nonexamining consulting psychologists also found plaintiff to have mental retardation: John J. Parsley, Psy.D. on 20 January 2011 (Tr. 95, 109) and Nancy Y. Herrera, Ph.D. on 17 March 2011 (Tr. 124, 137). Notably, of course, the ALJ rejected these diagnoses and found instead that plaintiff had borderline intellectual functioning. While the ALJ made this erroneous finding in the specific context of her RFC determination, it is certainly possible, if not likely, that it also underlies to some extent her determination at step two that plaintiff has the severe impairment of borderline intellectual functioning.

The court recognizes that the focus in a disability determination case is ultimately on the impact a medical condition has on an individual's functional abilities, not the diagnosis alone. *See, e.g., Smith v. Colvin*, No. 4:12–CV–237–D, 2013 WL 6247216, at *7 n.6 (E.D.N.C. 11 Oct. 2013), *mem. & recommendation adopted by* 2013 WL 6178584 (25 Nov. 2013). Nevertheless, the ALJ's reference to the apparently phantom diagnosis of borderline intellectual functioning shows that, to some extent, she based her RFC determination on it and likely her severity determination as well.

Also of concern is the ALJ's reliance on Dr. English's report with respect to plaintiff's adaptive abilities. Again, she found that "Dr. English remarked that . . . [plaintiff's] adaptive abilities are likely higher than her cognitive level would suggest." Tr. 31 ¶ 5. The statement by Dr. English to which the ALJ is referring reads:

> It is felt that adaptive abilities are likely higher than her cognitive level would suggest although the examiner was not able to obtain a valid Adaptive Abilities Scale due to the fact that no one came with her to serve as an informant.

Tr. 341. Earlier in the report, Dr. English states:

The primary reason for referral was to assess cognitive abilities, adaptive abilities and achievement levels. It should be noted that the adaptive abilities assessment could not be performed at this lime due to the fact that no informant who lived with her on a daily basis accompanied her.

Tr. 339.

While the ALJ does, in the context of her RFC determination,[8] include the limiting term "likely" Dr. English used in his opinion, she does not address the manifestly significant qualification he placed on it. The court questions whether this opinion can properly be given the significant weight apparently accorded it by the ALJ, at least in the absence of an explanation justifying such weight in light of Dr. English's qualification. Aside from that concern, the opinion does not address the degree to which plaintiff's adaptive abilities are purportedly higher than her cognitive abilities or the particular adaptive abilities involved.

Given these deficiencies relating to the ALJ's RFC determination and severity determination, the court cannot say that these determinations are based on substantial evidence of record. This case should accordingly be remanded on this additional basis.

## III.    CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 23) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 26) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

---

[8] The ALJ also relies on this opinion by Dr. English as one of several factors underlying her determination that plaintiff's allegations regarding her mental impairments are not fully credible. *See* Tr. 32-33 ¶ 5. In this instance, she omits the term "likely" from Dr. English's opinion. Tr. 33 ¶ 5.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 11 July 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 27th day of June 2014.

James E. Gates
United States Magistrate Judge